706 S.E.2d 526

**The STATE, Respondent,**

v.

**Kenneth Ray HARRIS, Appellant.**

No. 4796.

Court of Appeals of South Carolina.

Submitted Sept. 11, 2010.

Decided Feb. 23, 2011.

540

Appellate Defender M. Celia Robinson, of Columbia, for Appellant.

Attorney General Alan Wilson, Chief Deputy Attorney General John W. McIntosh, Assistant Deputy Attorney General Salley W. Elliott, Senior Assistant Attorney General Harold M. Coombs, Jr., all of Columbia; Solicitor William Walter Wilkins, III, of Greenville, for Respondent.

KONDUROS, J.

Kenneth Ray Harris appeals the trial court's denial of his motion for a new trial based on after-discovered evidence in the form of a recantation by a witness for the State. We affirm.[1]

## FACTS/PROCEDURAL HISTORY

In 1996, a jury convicted Harris of offenses including two counts of first-degree burglary, two counts of felony driving under the influence (DUI), and assault and battery of a high and aggravated nature (ABHAN).[2] The trial court sentenced him to twenty years' imprisonment for each count of burglary, fifteen years' imprisonment for each count of felony DUI, and thirty days' imprisonment for ABHAN, all to run concurrently. Harris's convictions arose out of events occurring on April 19, 1996. The State contended that while they were intoxicated, Harris, Chad Moore, and Steve "Peanut" Allen broke into the home of Moore's neighbor, Palaemon "Pete" Hilsman, beat him, and then forced him to take a ride with them in Hils-

---

1. We decide this case without oral argument pursuant to Rule 215, SCACR.

2. Harris was acquitted of kidnapping and grand larceny.

man's truck. Harris, while driving the truck, collided with a vehicle, injuring the two women in the other car.

At trial, Hilsman testified that on the night of the incident, while he was sleeping, he heard a loud noise and then saw three people running at his door. He testified they kicked the door in, knocking the deadbolt out of it. Hilsman had previously met Allen and Moore and recognized them as two of the men in his house on the night of the incident. He did not know the third person before that night but identified him at trial as Harris. He stated that Allen held him down while Harris kicked him in the rib cage, and then Allen began hitting him in the head.

Hilsman further provided that the three men left and returned about fifteen minutes later and began throwing and breaking objects in his house. They then "got [him] out of the house in the truck." He testified they all got into his truck and Harris was driving. He stated Harris, Allen, and Moore were all drinking beer as they drove around. Hilsman indicated Harris was driving at a high speed along a straight road and did not even slow down when they approached a stop sign. While going through the intersection, they hit another car, injuring two women in that car.

Moore testified that early in the morning on April 19, 1996, he woke up to find his friends, Harris and Allen, in his house drinking beer. The three of them then went to Hilsman's house, and Harris kicked in the door. Harris and Allen entered the house and began arguing with Hilsman. Hilsman got a knife, and Allen tackled him. Harris and Allen then started hitting Hilsman and one of them also kicked him. Moore testified that he, Harris, and Allen left Hilsman's house but returned a few hours later. They asked to borrow Hilsman's truck but he would only let them borrow it if he went with them. Hilsman bought more beer, and they continued driving around until Harris drove through a stop sign without stopping, colliding with another car, injuring two women in the other car.

In 2001, Harris moved for a new trial based on an affidavit by Moore that his testimony against Harris at trial was incorrect. Moore stated Solicitor Mark Moyer had threatened him that he would ensure Moore went to prison for at least

thirty years if he did not testify as Moyer instructed him. On October 27, 2005, Moore, Harris, and Moyer all testified at a hearing on the matter.

Moore testified that some of the testimony he had given at trial was false. He stated that his testimony that Harris had kicked Hilsman's door was untrue. He testified Moyer had insinuated that if he did not say Harris had kicked the door in, Moore would go to prison for the rest of his life. He further testified Hilsman and Harris did not argue or fight that night. Moore also stated that Hilsman and Allen did wrestle but they were just playing, there was no malice, and Harris was not involved. He stated that Moyer had told him "it's either you or them, but somebody has got to take it." Moore also testified Moyer told him he would receive a life sentence for the first-degree burglary charge against him but agreed to reduce it to second-degree burglary to run concurrent with the time he already received for a probation violation if Moore cooperated. Moyer also agreed to drop the kidnapping charge. Additionally, Moore testified that Moyer wrote him a couple of letters while he was incarcerated and requested to visit him once but never came.

Moore explained he wrote an affidavit describing how his testimony was incorrect because he wanted to "let it be known that everything I stated at the time of the trial wasn't the absolute truth, and why I stated the things I did. And that it was because—at the time, I really didn't have a firm grasp of how, you know, legal proceedings were." He further stated:

I really was under the impression, at the time, that pretty much whatever Mr. Moyer said he could give me is what he could give me. I didn't, you know, really realize it wasn't really up to him, period, with what the sentence was, or for that matter any lengths of time that he couldn't give me anything. The Judge had to give it to me. I figured that if I didn't, you know—and he was an authority figure, too, also.

Moore also testified he currently had charges pending against him from the solicitor's office where Moyer worked.

Harris testified at the hearing he always turned his head and did not speak to Moore the few times he had seen Moore in prison. Harris provided that Moore approached him and

apologized and then wrote the affidavit recanting some of his testimony. He further testified that he believed Moore's testimony was the reason he was convicted; "[h]e was their only witness, their only evidence." Despite Hilsman's testimony that Harris beat him, Harris maintained the State did not prove he assaulted Hilsman because the State never introduced any pictures of Hilsman's injuries or medical reports. Harris speculated that the State probably pressured Hilsman to testify against him like it did Moore.

Moyer also testified at the hearing. He stated that he met with Moore before Harris's trial and Moore was very cooperative and eager. Moyer believed Moore's testimony matched Hilsman's story of what had happened. Moyer also explained that he had contacted Moore while he was in prison because he wanted to interview Moore about a paper he was writing for a class on a link between education level and criminal activity. However, after Moyer decided not to write the paper, he had no further contact with Moore.

In 2008, the trial court issued an order finding Moyer's testimony credible.[3] It further found the circumstances surrounding Moore's giving the affidavit recanting his trial testimony, the time when the affidavit was given, and Moore's testimony during the hearing caused it to find the recantation testimony unreliable. This appeal followed.

## LAW/ANALYSIS

■ Harris contends the trial court erred in denying his motion for a new trial based on after discovered evidence of perjury by a witness for the State. He maintains he could not have discovered the false testimony during the trial and the recanted testimony was material, helpful to the State, and undoubtedly contributed to his conviction. We disagree.

■ "A motion for a new trial based on after-discovered evidence must be made within a reasonable period of time after the discovery of the evidence...." Rule 29(b), SCRCrimP. "A motion for a new trial based on after-discov-

---

**3.** The court noted: "Through inadvertence, a written order was not issued after the hearing. This written order is issued for the purpose of any appeal."

ered evidence is addressed to the sound discretion of the trial judge." *State v. Irvin,* 270 S.C. 539, 545, 243 S.E.2d 195, 197 (1978). "The granting of a new trial because of after-discovered evidence is not favored," and this court will affirm the trial court's denial of such a motion unless the trial court abused its discretion. *Id.* at 545, 243 S.E.2d at 197–98.

 The credibility of newly-discovered evidence is for the trial court to determine. *State v. Porter,* 269 S.C. 618, 621, 239 S.E.2d 641, 643 (1977). Only the trial court and not the appellate court has the power to weigh the evidence; the trial court's judgment will not be disturbed except for error of law or abuse of discretion. *Id.* "In this post-trial setting, our jurisprudence recognizes the gatekeeping role of the trial court in making a credibility assessment." *State v. Mercer,* 381 S.C. 149, 166, 672 S.E.2d 556, 565 (2009). "On review, we may not make our own findings of fact. The deferential standard of review constrains us to affirm the trial court if reasonably supported by the evidence." *Id.*

 In order to warrant the granting of a new trial on the ground of after-discovered evidence, the movant must show the evidence (1) is such as will probably change the result if a new trial is granted; (2) has been discovered since the trial; (3) could not have been discovered before the trial by the exercise of due diligence; (4) is material to the issue; and (5) is not merely cumulative or impeaching. *State v. Spann,* 334 S.C. 618, 619–20, 513 S.E.2d 98, 99 (1999). " 'Recantation of testimony ordinarily is unreliable and should be subjected to the closest scrutiny when offered as ground for a new trial.' " *Porter,* 269 S.C. at 621, 239 S.E.2d at 643 (quoting *State v. Mayfield,* 235 S.C. 11, 34–35, 109 S.E.2d 716, 729 (1959)).

This issue comes down to a matter of the credibility of the witnesses, which we leave to the trial court's discretion. The trial court found Moyer to be credible. It also found the circumstances surrounding Moore's recantation as well as Moore's testimony at trial made the recantation unreliable. The record supports the trial court's assessment. Accordingly, the trial court did not abuse its discretion in denying

546

Harris's motion for a new trial. Therefore, the trial court's order is

**AFFIRMED.**

WILLIAMS and PIEPER, JJ., concur.